**McCARTHY et al. v. VALDEZ.** (No. 7270.)

Court of Civil Appeals of Texas. Austin.
Oct. 31, 1928.

Rehearing Denied. Nov. 21, 1928.

Duvall & Duvall, A. W. Bounds, and E. W. Bounds, all of Fort Worth, for appellants.

T. H. McGregor, A. L. Love, and Cofer & Cofer, all of Austin, for appellee.

BLAIR, J. Appellee sued appellants F. J. McCarthy, Daniel Gayton, D. M. Davis, and Charles Conner, as a motorbus copartnership operating between Fort Worth and San Antonio, through intermediate points, including Austin, under the trade-name of Spanish American Travel Agency, for damages for personal injuries and loss of money in a purse, sustained as the result of appellee's being thrown from a bus alleged to have been operated by appellants, and because of the alleged negligence of one Hugle, appellants' alleged agent, servant, and employee, driving the bus in such manner as to cause it to be violently jarred, jerked, and shaken, thereby causing the appellee to be thrown through the doorway of said car and upon the ground. Upon special jury findings, judgment was rendered for appellee for $1,744.15, from which this appeal has been perfected.

The 21 propositions predicated upon some 16 assignments of error present the following questions only which merit discussion:

1. The principle contention made in the brief and oral argument on appeal is that there is no legal evidence to sustain the jury's findings (1) that at the time of the accident Hugle was "acting as the agent of the defendants (appellants) in the transportation

of plaintiff (appellee)"; and (2) that Hugle was "acting within the scope of his authority under his agreement with defendants (appellants) in accepting plaintiff (appellee) for transportation from San Antonio to Ft. Worth." We do not sustain the contention.

The evidence shows without material dispute or conflict that at the time of this accident appellants, as a copartnership and as a common carrier under the Motorbus Law (Acts 1927, pp. 399–409, c. 270), were operating a motorbus line between Fort Worth and Laredo, through Austin, and San Antonio under permission of the Railroad Commission, and under the trade-name of Spanish American Travel Agency. They owned and listed with the Railroad Commission a Packard sedan under license No. M. B. 7040, which was used on their bus routes. Before this accident they sold this car to the Packard agency at Fort Worth. Later, and about two months before the accident, the Packard agency sold this car to one Hugle, who had been employed by appellants for two or three years as a driver of their service cars. After Hugle purchased the car, he operated it for appellants under the following arrangements as testified to by appellant Conner:

"We listed Hugle's car with the Railroad Commission as one of our cars. We are required to list any car we operate. It was listed as one of our cars, and we used it when we needed it on our route that our permit called for. * * * I had something to do with the money from the passengers he carried from Fort Worth down there the day before. He carried those passengers in a car listed as our car; he was carrying those on our route and our permit, and he was to come back under our permit provided our office in San Antonio gave him some passengers. * * * When the car was being used under the arrangement I spoke of yesterday Mr. Hugle was driving it. It was his car, and when he carried passengers for us we would take ten per cent of the fare. He furnished the car and did the driving and attended to the upkeep of the car. We had Mr. Hugle and others working that way. * * * Hugle did not have a permit to operate an automobile. Our permit covered this car he was driving when he was operating for us. We have a permit to operate from Fort Worth to San Antonio, and this is one of the cars listed, and on the day before the accident or the day before that this car carried passengers for us to San Antonio."

Hugle confirmed the above testimony of Conner as to the contract, and in addition testified without contradiction that it was also agreed that, on return trips to headquarters at Fort Worth, and when appellants could not furnish him passengers he might pick up passengers where he could, and that with reference to such passengers appellants were not to receive any portion of the fare. The testimony is undisputed that, on the morning of December 6th, appellants sent Hugle to San Antonio, under the contract in force between them, with passengers; that on December 7th Hugle made ready his car for the return trip to Fort Worth; that on the morning of December 8th, as per schedule of the Spanish American Travel Agency filed with the Railroad Commission, he called at appellants' office in San Antonio, but they had no passengers for his return trip, whereupon Hugle went to another transportation agency, the Guerra Agency, in San Antonio, and after giving this agency the card of the Spanish American Travel Agency, the Guerra Agency delivered to him appellee, his wife and little boy, for transportation to Fort Worth, and paid him $9 as their fare. In making this return trip, Hugle made it on the north-bound schedule of appellants, and no other car or person made that trip or schedule for them on that day. And in this connection Hugle further testified as follows:

"In hauling the passengers from Fort Worth to San Antonio I went over the route of the Spanish American Travel Agency, and I came back the same route. The passengers I took from Fort Worth to San Antonio were turned over to me as the Spanish American Travel Agency's passengers, and I hauled them * * * I personally have not taken out a permit to operate a motorbus. As to who took it out for me, I don't know. I have not a permit from the Railroad Commission to haul passengers. * * * I reported this accident to Mr. Conner just because I had the accident. I told him the next morning when I got back that I had had the accident. * * * I am still driving out of that same office, still on the same contract, just like always; there has not been a bit of change at all in the contract. My motorbus license for 1927 was M.B. 7040. With reference to giving this Mexican down here at the café one of the company's cards, I gave it to him to advertise our business, the Spanish American company's business. That Mexican runs a Mexican restaurant here. My passengers are practically all Mexicans, and I gave him that card to advertise the agency. * * * As to whether I am competing with the Spanish American Travel Agency or working for them, I am running my car out of their office."

Appellant Conner also testified, with reference to an affidavit he made for a continuance of the case after the pleadings of appellee alleging when and where the accident occurred had been filed, and long after Hugle had reported to him when and where the accident occurred, as follows:

"This is my signature. I swore to this paper. I read it before it was sworn to. This paper contains this statement: 'The defendants further state that they cannot safely go to trial at this term of court because it is impossible for them to secure the presence of their witness, John T. Hugle, who was driving the car of the defendants at the time of the alleged accident.' That was true. This paper contains the further statement: 'That the said John T. Hugle was at the time of the alleged accident and until a few days ago employed by the defendants as a driver.' That was true. He was in our employment at the time of the accident, in the ca-

pacity of driving the car. I stated under oath that he was in our employ, and I stated the truth."

It was on the return trip from San Antonio to Fort Worth, and at a point a short distance out of Austin, that appellee was thrown from the bus so driven by Hugle, and sustained the injuries and damages here involved.

The evidence detailed fully supports the jury's findings on the agency questions submitted, if it does not establish the agency of Hugle as a matter of law. We are inclined to the view that the public policy of this state as expressed in the Motorbus Law with reference to the right of individuals, firms, etc., to use the public highways for transportation by motor vehicles of passengers for hire and as a common carrier, and with reference to the duty "to protect the public in its dealing with such common carrier," will not permit of the on and off agency attempted to be established in this case. A summary of the undisputed evidence simply shows that appellants registered the car or bus here involved as their own and obtained a permit from the Railroad Commission to operate it on the public highways and on designated routes in transporting passengers for hire and as a common carrier. A motorbus license was displayed on the car. Appellants permitted Hugle to advertise their business and solicit passengers in their name at all times and along their designated routes and elsewhere, by giving out their business cards. Hugle was also permitted to solicit passengers just as he did appellee for return trips to Fort Worth when appellants had no passengers for his return trip, and to return with such passengers over appellants' route and on their permit issued by the Railroad Commission. Hugle had no permit to operate the car, and was operating it in violation of law at the time of the accident, unless protected by the permit issued to appellants. And on the occasion of this accident Hugle was driving this car protected by the permit of appellants, transporting appellee as a passenger for hire, running on appellants' north-bound schedule and on their authorized route, and making a return trip from San Antonio where appellants had sent him with passengers to Fort Worth, where appellants' principal office and headquarters are located, and out of which Hugle was running the car under registration and permit of appellants, and for appellants. Clearly under such facts and circumstances appellants ought to be estopped and should not be permitted to deny the agency of Hugle on the occasion of the accident involved in this suit.

2. Hugle testified on direct examination and as a witness for appellants that he was not operating the car for appellants at the time of the accident, but was operating for himself and as an "independent operator." He was asked on cross-examination if he did not tell certain named parties shortly after the accident that he was operating the car for the Spanish American Travel Agency of Fort Worth. This he denied and appellee then proved by these parties that he did so tell them. The jury were instructed at the time to consider this testimony solely for impeachment purposes and not as establishing the agency of Hugle, and the court again so instructed in his written charge to the jury.

Appellants contend that it was error to introduce this testimony, because it was an attempt to prove agency indirectly and by a declaration of the agent. The contention is not sustained. The declarations or statements were admitted solely as impeaching evidence and expressly so limited by the court at the time and again in the charge to the jury, and, being so limited and being proper impeaching testimony, the court committed no error in admitting it.

3. Appellants also complain of the testimony of witness Platt to the effect that Hugle told him shortly after the accident that he was driving the car for a Fort Worth bus company. The only objection made to Platt's testimony was that the question soliciting it was leading. Therefore appellants' counsel cannot here urge the proposition that the testimony was impeaching evidence. The specific complaint here is that, since Hugle admitted he told Platt what Platt testified to, the testimony should not have been admitted for the purpose of impeaching Hugle. But the record shows that counsel making the objection stated to the court that he did not remember whether Hugle denied making the statement attributed to him by Platt on his direct examination. The court was therefore warranted in admitting the evidence which was expressly limited to impeaching evidence. But, aside from the fact the court was warranted in admitting the evidence, the fact that Hugle admitted he made a statement to Platt contrary to his testimony on the trial of the case did not alter the impeaching character of the testimony. The admission may have relieved appellee of the necessity of introducing Platt's impeaching testimony, but, since he did so, we do not feel that it is of sufficient consequence to reverse the case, if error, which we do not concede.

4. The court submitted the following issue of negligence to the jury:

"Was the driver of the car, under all the circumstances, at the time of the accident, driving the same in such a manner as to cause it to be violently jarred, jerked, and shaken, thereby causing the plaintiff to be thrown through the doorway of said car and upon the ground? Answer this question 'yes' or 'no.'" Answer: "Yes."

The question followed substantially appellee's allegations of negligence; it having been alleged that the car was being driven at the time of the accident at a high and excessive rate of speed exceeding 40 miles

per hour, and was being so driven at the time over rough places in the road and around a curve and bend in the road, and that appellee was violently shaken and jarred and jerked and thrown with great force against and through the door of the automobile. The testimony of appellee and his wife followed substantially these allegations of negligence, and appellants' contention that it did not do so is not sustained.

We have carefully examined and considered appellants' several remaining assignments of error and propositions, and find that the questions raised particularly by assignments 15 and 16 and the propositions predicated thereon are not properly before this court, because they do not appear either in the motion for a new trial, or, if filed as assignments of error independent of the motion for a new trial, they were not called to the attention and ruling of the trial court. Phillip's Petroleum Co. v. Bools (Tex. Com. App.) 276 S. W. 669; Clonts v. Johnson 116 Tex. 489, 294 S. W. 844; Wright v. Maddox (Tex. Civ. App.) 286 S. W. 607; O'Connor v. O'Shaughnessy (Tex. Civ. App.) 288 S. W. 842; Hamilton v. Express Pub. Co. (Tex. Civ. App.) 290 S. W. 808.

We are also of the opinion that no proposition or assignment, whether properly raised or not presents any error requiring a reversal of the case, and the judgment of the trial court will be affirmed.

Affirmed.