Dorse **WARDLOW**, Appellant,

v.

Ethel **NEWBERRY** et al., Appellees.

No. 3409.

Court of Civil Appeals of Texas.
Eastland.

Dec. 12, 1958.

438

McMahon, Smart, Sprain & Wilson, Abilene, for appellant.

Smith & Pope, Abilene, for appellee.

COLLINGS, Justice.

This is an appeal from an order overruling a plea of privilege. Ethel Newberry, the surviving wife of Claude Newberry, and their children, filed suit against Dorse Wardlow, John Henry Weathersby and Nathaniel Dorsey in Jones County to recover $84,000 damages alleged to have been sustained by plaintiffs because of the wrongful death of the said Claude Newberry as a result of a collision by his car with the rear end of a truck on a highway in Jones County on December 19, 1956. Plaintiffs alleged that the truck was at the time of the collision owned by John Henry Weathersby, under a lease contract to Dorse Wardlow and being operated by Nathaniel Dorsey who was acting in the course of his employment with Wardlow. Dorse Wardlow filed a plea of privilege to be sued in Galveston County, the place of his residence. The plaintiffs filed controverting affidavits. claiming venue in Jones County under the provisions of Exceptions 9a of Article 1995, Vernon's Ann.Tex.Civ.St. The plea of privilege was overruled and Wardlow has. appealed.

Appellant Wardlow urges four points of error in which it is contended that there was no evidence that Wardlow or any person acting as his agent or representative committed a trespass, crime or act of negligence in Jones County; that the evidence was insufficient to show any liability on the part of appellant Wardlow; that it was insufficient to show that Dorsey was acting in the capacity of an agent or representative for Wardlow at the time of the collision,. and that it was insufficient to show that the truck involved in the collision was under lease to Wardlow and/or being operated under Wardlow's Railroad Commission Contract Carrier Permit.

The evidence shows that on the night of December 19, 1956, at approximately 6:30 or 7:00 p. m., Claude Newberry was killed as the result of a collision of his car with the rear end of a truck which was standing on his right hand side of the paved portion of U. S. Highway 277 about ten miles south

of Anson in Jones County, Texas. There was evidence to the effect that immediately prior to the collision the truck was standing on the highway with no lights of any type on or about the truck and that no lights, fuses, flares, electric lanterns or warning lights of any kind were displayed for the protection of persons using the highway. It was later ascertained that the truck was out of gasoline. The truck was described as an old model White truck with a sign displayed on its side reading, "Dorse Wardlow Truck Lines, La Marque, Texas". The license plate on the truck was IX 9764. The evidence further shows that the truck had been loaded with wheat at a grain elevator in Hamlin, Texas, under a purchase order issued by Dorse Wardlow Truck Lines, to be carried under a special commodity permit in the name of such truck line, being permit number 15380, issued by the Railroad Commission of Texas. At the time of the collision Dorse Wardlow owned and operated the business known as Dorse Wardlow Truck Lines. He was operating approximately thirty trucks, most of which had been leased to him by the owners.

The truck here involved was owned by John H. Weathersby and the motor number was 150AA–20842. It was under lease to Wardlow by a written contract dated December 6, 1956. The lease was on file with the Texas Department of Public Safety as required by Article 6701c–1, V.T.C.S., and Wardlow became eligible under Article 911b, V.T.C.S., to operate the truck under his Railroad Commission permit. The lease contract between Weathersby and Wardlow provided: "That lessee (Dorse Wardlow) shall have full domination and control over said equipment and the driver thereof." The evidence further shows that there was an oral agreement between the parties that Weathersby would either drive his truck personally or furnish a driver at his own expense, but the selection of a driver was subject to the approval of Wardlow.

On or about December 15, 1956, Nathaniel Dorsey who had on some occasions in the past driven Weathersby's truck appeared at Wardlow's office in La Marque, Texas, for the purpose of being issued loading purchase order. Upon inquiry by Wardlow, Dorsey stated that he had a driver's license but did not have it with him. Mr. Wardlow refused to issue a loading purchase order to Dorsey at the time and stated that he would not do so until Dorsey produced his driver's license. Shortly thereafter the purchase loading order was issued by Wardlow's office to load "this particular load of wheat". Wardlow dispatched a memorandum to Weathersby which read as follows: "Be sure that Nathaniel has a license when he goes out." No other instructions were given by Wardlow to Weathersby about the driver of the truck. The evidence indicates that Wardlow knew that Dorsey had been driving the truck for Weathersby on at least two prior occasions. It had been agreed between Wardlow and Weathersby that the latter could furnish the driver subject to Wardlow's approval and that Weathersby could substitute a driver without notifying Wardlow so long as either Wardlow or Weathersby knew who was driving the truck.

Thereafter on December 19, 1956, at approximately 6:30 or 7:00 p. m., the collision occurred. Investigation of the accident by an officer of the Texas Highway Patrol revealed that the driver of the truck was Nathaniel Dorsey. Upon questioning by the officer Dorsey claimed to be Johnnie Weathersby, and produced a driver's license in the name of Johnnie Weathersby. There was evidence to the effect that Johnnie Weathersby had prior thereto placed his driver's license in the door pocket of the truck; that he did not give the license to Dorsey and had not authorized Dorsey to use it. However, Weathersby was charged and entered a plea of guilty in Jones County for permitting Dorsey to use his driver's license. It also appears that Weathersby entered a plea of guilty in Jones County to the offense of displaying a fictitious license plate on the truck. He testified that the license plates were on the.

truck at time he purchased it; that the truck involved in the collision was the same one which was under lease to Dorse Wardlow and that he recognized the license plates as being the same ones which had been on the truck for some time. A complaint was also filed in Jones County against Nathaniel Dorsey charging him with second degree negligent homicide. Dorsey entered a plea of guilty to the charge and served a sentence in Jones County.

Article 1995, Subdivision 9a, provides that a suit based on negligence per se, negligence at common law, or any form of negligence, active or passive, may be brought in the county where the act or omission occurred. It is provided that the venue facts necessary to be established in such cases are that (1) the negligent act or omission occurred in the county where suit was filed; (2) that the negligence complained of was that of the defendant in person, or of his servant, agent or representative acting within the scope of his employment and (3) that such negligence was a proximate cause of the injuries complained of. There is ample evidence that Nathaniel Dorsey was guilty of negligence as alleged in Jones County proximately causing the tragic collision here involved as contemplated in Subdivision 9a. The question in controversy is whether Dorsey was at the time a servant, agent or representative of Dorse Wardlow.

Appellant Wardlow urges that it is undisputed that the only purpose of the truck lease contract between him and Weathersby was to satisfy an administrative formula promulgated by the Railroad Commission in order that Weathersby's truck might be operated under Wardlow's permit; that Wardlow's office served only as a clearing house for purchase orders and receipts; that Wardlow had no control over his various lessor drivers; that he did not hire Nathaniel Dorsey, did not pay his salary and did not have the right to fire him; that he did not maintain and was in no way responsible for the maintenance of the lease truck or any cargo losses. Wardlow contends that these facts show that Weathersby was an independent contractor and that Dorsey was not an agent, employee or representative of appellant at the time of the collision, but was an employee of Weathersby. We cannot agree with this contention.

Article 911b, Vernon's A.T.C.S., provides for the regulation of motor vehicles engaged in the transportation of property for compensation or hire over the highways of this state and places the authority for the granting of special commodity permits in the Railroad Commission of Texas. Prior to the collision in question Wardlow had applied for and obtained special commodity carrier permit number 15380 and his operations were carried on by virtue of such permit.

Article 6701c–1 provides:

"Sec. 2. No commercial motor vehicle nor any truck-tractor shall be operated over any public highway of this State by any person other than the registered owner thereof, or his agent, servant or employee under the supervision, direction, and control of such registered owner unless such other person under whose supervision, direction and control of said motor vehicle or truck-tractor is operated shall have caused to be filed with the Department of Public Safety an executed copy of the lease, memorandum, or agreement * * *."

"Sec. 4. Such lease, memorandum, or agreement as required by Section 2 of this Act shall contain or provide, but shall not be limited to, the name and address of the registered owner of such commercial motor vehicle or truck-tractor, the name and address of the person other than the owner, the actual consideration, the term, the commodity or commodities to be transported under such lease, memorandum or agreement and a full description of the commercial motor vehicle or vehicles or truck-tractors covered thereby; *that the operation of such vehicle shall be*

*under the full and complete control and supervision of the person other than the registered owner,* and except as to leases between regulated carriers subject to the jurisdiction of the Railroad Commission or Interstate Commerce Commission, that the person other than the registered owner shall provide for public liability and property damage insurance on each and every vehicle during the term of such lease memorandum or agreement \* \* \*." (Emphasis ours.)

"Sec. 6. No commercial motor vehicle or truck-tractor shall be operated over any public highway of this State when said vehicle is being operated by a person other than the registered owner or his agent, servant or employee under the supervision, direction, and control of such registered owner, unless there shall be affixed in a conspicuous place on each side thereof a sign or placard, in letters not less than two inches in height or less than one-fourth inches in width, showing the name and address of such person, firm or corporation under whose control, direction and supervision said vehicle is being operated, whether individually or through an agent, servant or employee, under the supervision, direction and control of such person, firm and corporation other than the registered owner."

It is apparent that Dorse Wardlow was operating his trucking business under the authority of the foregoing statutes at the time of the collision. Contrary to appellant's contention, there is ample evidence to show that Weathersby's truck was at the time being operated under Wardlow's Railroad Commission permit. Appellant urges in his brief that the only purpose of the lease was to permit the truck to be so used. Wardlow admitted that on the occasion in question the truck was carrying a load of wheat from Hamlin, Texas, to the Galveston Wharves Elevator in Galveston. The trip was made under a purchase order

issued by Dorse Wardlow Truck Lines. Contrary to appellant's contention, the evidence is amply sufficient to show that the lease contract between Weathersby and Wardlow covered the truck involved, and was in force and effect at the time of the accident. Wardlow admitted that the lease was then in effect. In compliance with the statute there was a sign on the side of Weathersby's truck reading: "Dorse Wardlow Truck Lines, La Marque, Texas". The evidence shows that this was the only truck owned by Weathersby, and he identified it as being the truck involved in the collision. Contrary to appellant's contention, there was evidence to the effect that Dorsey was an agent or employee of Wardlow, Dorsey had previously operated the truck under lease to Wardlow. He came to Wardlow to secure a loading order for another trip. The loading order was issued by Wardlow's office with the instruction to Weathersby not to let Dorsey go until it was ascertained that he had a driver's license. It was understood between the parties Weathersby had authority to secure a driver for the truck and the fact that he failed to comply with Wardlow's instruction in this respect did not destroy the authority delegated to him.

The contract obligated Wardlow to operate the truck in conformity with all applicable laws, rules and regulations of the State and Federal governments. The lease contract showed an intention to comply with Section 3 of Article 6701c by the provision to the effect that the truck was not subject to any other lease on file with the Department of Public Safety. The lease contract also showed compliance with Section 4 of Article 6701c by the provision that Wardlow was to have full domination over the truck and its drivers. It is true that both Wardlow and Weathersby testified that under an arrangement between them, the responsibility to furnish a driver for the truck was on Weathersby. He could drive the truck himself, or hire another driver. But the parties were still operating under the lease contract and it gave Wardlow

**442**

"full domination and control" over the driver. The statute required this provision to be in the contract. As long as they were operating under the contract any control of the truck or its driver by Weathersby was under the authority and direction of Wardlow.

 It is held that the right of control of a driver by one who operates under such a permit is a non-delegable right and that the relationship cannot be created for the purpose of escaping liability for injury to others which would otherwise attach. Appellant admits and says it is undisputed that the only purpose of the lease was to satisfy an administrative formula promulgated by the Railroad Commission in order that Weathersby's truck might be operated under appellant's Railroad Commission permit. Under these circumstances Wardlow cannot deny the agency of Dorsey on the occasion of the collision here involved. McCarthy v. Valdez, Tex.Civ.App., 10 S.W. 2d 1051, Writ Dis.; Boyett v. Galey, Tex. Civ.App., 254 S.W.2d 807. In Emerson v. Park, Tex.Civ.App., 84 S.W.2d 1100, 1102, a question of this type is considered by the court and discussed as follows:

"We think that the public policy of this state, as expressed in the Motor Bus Law, with reference to the right of a party to use the public highways for the transportation by motor vehicles, commodities for hire, and as a common carrier, and with reference to the duty to protect the public, will not permit one who acquires a permit from the Railroad Commission to operate as a motor carrier to delegate the rights conferred by such permit to a third party, and *by so doing release himself from liability to those injured by the negligence of the wrongfully delegated party*. No party to whom such permit is issued should be permitted to transfer to another the rights conferred upon him only by the permit. No person should be permitted to traffic in such permits, for if such can be done the party could indirectly usurp the au-

thority of the Railroad Commission, in that he is undertaking to confer upon another the right conferred upon him only." (Emphasis ours.)

In our opinion Dorse Wardlow's plea of privilege was properly overruled. There was ample evidence to establish the controlling venue facts of negligence by acts and omissions in Jones County by a servant of appellant acting within the scope of his employment proximately causing the injury complained of. Appellant's points of error are overruled.

The order overruling the plea is affirmed.

WALTER, J., disqualified and not sitting.